# Lord's Appeal.

|105  451|
|166  516|
|105  451|
|177  252|

1. Where one is in open and notorious possession of land, under a valid contract for the purchase of the same, a subsequent grantee of the person holding the legal title is not an innocent purchaser, and the conveyance to him will not be allowed to defeat the title of him in possession.

2. To take a parol contract for the sale of land out of the operation of the Statute of Frauds, its proof, in all essentials, and all its equities should be so plain as to preclude doubt or hesitation in reaching a conclusion.

3. A. bought a farm, giving three judgment notes as a consideration therefor, which were entered up against him. B., the holder of these judgments, afterwards filed a bill in equity, in which he set out that A., in payment of said judgments, had given him possession of the farm, and had promised to convey the same to him on satisfaction of the judgments. The bill further alleged a readiness on B.'s part to satisfy the judgments, and prayed for specific performance of the contract to convey. A., in his answer, denied any such agreement, and claimed that B.'s possession was in pursuance of a contract of lease. The judgments were not satisfied of record, but their lien was allowed to expire. The fact of the parol agreement for the sale of the land was sustained by the weight of the evidence; but among the salient points of the case were the conflicting evidence respecting the contract; that the possession was as consistent with the lease averred by A. as with the purchase averred by B.; that the possession was recent, and the improvements such that the extent and value thereof could be proved and compensated for in damages; that the parties treated the judgments as remaining in force until the lien expired, and that the insolvency of A. was as well known to B. at the date of the contract as afterwards. The Statute of Frauds having been pleaded:

*Held*, that under all the circumstances specific performance of the contract would not be enforced against the operation of said statute.

February 25, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL of Alva I. Lord from the Court of Common Pleas of *Wayne county:* In Equity: Of July Term, 1883, No. 27.

Bill in equity between William Holbert and Franklin Holbert, surviving partners of the firm of Holberts & Branning, complainants, and Mahlon McKinney and Alva I. Lord, defendants, praying a decree for the specific performance of an alleged contract for the sale of real estate to the complainants.

The bill set out that on May 25, 1874, the defendant McKinney owned the land in question, besides certain personal property; and that plaintiffs held three judgments against him, amounting to $3,400, with interest from November 3, 1871, and also a claim against him on book account amounting to $204.65. That McKinney, by parol agreement, sold and delivered possession of said land to plaintiffs in full pay-

ment and satisfaction of said judgments, agreeing to convey the same whenever requested, and plaintiffs agreeing to satisfy said judgments upon such conveyance; and that McKinney, also by parol, sold and delivered to plaintiff said personal property in full payment of said book account. That plaintiffs took possession of said land under said agreement, have ever since held exclusive possession thereof, cleared forty acres, and made improvements to the value of $1,500. That McKinney, though often requested, delayed the execution of a conveyance, and after the lien of said judgments expired refused to convey to plaintiffs, and conveyed said land to the defendant, Lord,. for the purpose of defrauding plaintiffs. That the lien of said judgments was lost by reason of said parol agreement by McKinney and plaintiffs' faith therein. That the defendant, Lord, at the time of said conveyance to him, knew the plaintiffs were in possession of said land, and had made valuable improvements thereon. That plaintiffs are ready to satisfy said judgments in accordance with said agreement. Prayer: That the defendants execute an assignment of their title to said land to plaintiffs on satisfaction of said judgments by plaintiffs.

The defendant, McKinney, in his answer admitted that on May 24, 1874, he was owner and in possession of said land and personal property, and that plaintiffs held said judgments, but denied all other averments of the bill. He further averred that long before the conveyance to the defendant Lord, plaintiffs, for a valuable consideration, agreed to cancel said judgments, which are now fully discharged, and should be satisfied of record. That the only legal possession of said land by plaintiffs was under an agreement that they should work the farm and account to him for the profits; that they were never authorized by him to clear or improve the same. That they have removed a large quantity of timber and bark therefrom without permission, without accounting therefor, and have destroyed buildings and injured said property, thereby injuring defendant to an amount greater than said judgments. That the only application by plaintiffs to defendant to assign the title to said land was in the summer or autumn of 1877, when William Holbert suggested to defendant that he had better make such assignment, which defendant refused to do; that Holbert did not then allege that defendant had agreed to make such assignment, nor that said judgments were an existing obligation. That the conveyance to the defendant Lord was in good faith and for a valuable consideration, and without intent to defraud. McKinney further set up the bar of the Statute of Frauds.

The defendant Lord, in his answer, admitted that on May

25, 1874, McKinney was owner and in possession of said land and personal property, and that said judgments were entered, and denied all other averments of the bill. He averred that he bought said land from McKinney in good faith for a valuable consideration, and without any knowledge or intent that any person should be defrauded thereby. That at the time of purchasing he caused the records to be examined, and found no liens against said land, and was informed and believed that said judgments had been discharged by McKinney, and that McKinney held an undisputed title to said lands, free from all claims or incumbrances. That he was then informed and believed that no other person than McKinney clamed ownership or possession, except that plaintiffs were permitted, under a special agreement with McKinney, to occupy the farm part of said land, and account to McKinney for the proceeds. Lord also pleaded the Statute of Frauds.

The cause was referred to H. Wilson, Esq., as master, who found the following facts: "The defendant McKinney was employed by Holberts & Branning previous to the summer of 1871, and from that time until the spring of 1874. In September, 1871, he bought of David Chapman the land described in par. 2 of plaintiff's bill, with personal property estimated at $800, for $3,400. H. & B. lent him $1,000 to make the first payment, for which he gave them his note. To secure the balance of purchase money, McKinney gave Chapman his two notes for $1,200 each, which were subsequently purchased by H. & B. The three judgments mentioned in par. 3 of plaintiff's bill were entered on these notes. The whole of McKinney's debt to Chapman was thus paid with money furnished by H. & B., and they hold all the judgments to secure it.

"McKinney occupied this land from the date of the purchase until the spring of 1874. During this period a quantity of bark and lumber was taken from the land; being purchased by H. & B., and its price, $1,200 or upward, paid by them to McKinney.

"In the spring of 1874, McKinney had paid neither interest nor principal of the judgments, and was also indebted to H. & B. on book account for merchandise. A parol contract was then made between these parties, in pursuance of which McKinney transferred to H. & B. possession of the land, and of the greater part of his personal property except his household furniture. As to the terms of this contract and its date, the testimony is somewhat conflicting. . . . . . The master finds that all the material averments contained in plaintiffs' bill of complaint relating to the terms of the contract, its execution on the part of H. & B., and the several matters which entitle

them to demand specific performance, are sustained by the evidence."

The master further found that the valuable consideration referred to in McKinney's answer as having been given for an agreement by H. & B., to cancel the judgments was as follows: In May, 1876, McKinney gave William Holbert seven judgment notes for $500 each, running from one to seven years, as a substitute for the original judgments, should they be found preferable for the purpose of negotiating a loan. At the same time Holbert gave McKinney the following certificate: "This is to certify that Mahlon McKinney has this day given us his judgment notes of $500 each, due 1, 2, 3, 4, 5, 6, and 7 years making in all $3,500, which we agree to return to said McKinney within twenty days from this date, or cancel the judgment notes we now hold against him for $3,400, principal, and we may do either at our option.

HOLBERTS & BRANNING."

After finding these facts (which, with his conclusions therefrom, are set out more at length in the opinion of the Supreme Court), the master reported as follows: "The improvements made on the land by H. & B. present the general character recognized as taking a parol contract out of the Statute of Frauds. . . . . . In the opinion of the master, the plaintiffs have met all the requirements growing out of the construction of the Statute of Frauds, and a rescission of the contract would be highly unjust to them. In their reliance upon it, they allowed the lien of their judgments to expire, without revival; while McKinney has since conveyed the legal title to his co-defendant, and is insolvent. It would therefore be impossible to place the parties in statu quo. A peculiar feature of the case is that McKinney never had anything invested in the land, nor any real interest in it apart from a naked legal title. The consideration was wholly paid by H. & B.; McKinney held possession for about two years and a half, and during that period received $1,000 to $1,200 from H. & B. for bark and timber taken from the land, without paying a dollar of interest or principal; and then, unable to pay anything,—with the value of the land diminished by the removal of bark and timber, and the debt for purchase money increased by arrears of interest,—he abandoned it to H. & B. as a payment of the debt."

The master therefore recommended a decree that McKinney be ordered to execute a conveyance of the land in question to the plaintiffs, to be delivered upon the entry of satisfaction, by the plaintiffs, of the judgments recited in their bill of complaint.

As to the defendant Lord, the master found that no fraud

on his part, in the purchase of the land from McKinney, had been proved; and therefore that the bill should be dismissed as to him.

Exceptions filed to this report by both plaintiffs and defendants were argued before HAND, J., who affirmed the master's report as to the defendant McKinney, but not as to the defendant Lord. The opinion of the court was, inter alia, as follows: "The plaintiffs complain that the master should have found that Lord knew that plaintiffs were in possession of the land at the time of his alleged purchase; that Lord gave no consideration, and was a party to the fraud. . . . . . Practically, however, so far as the merits of this case are concerned, in order to entitle the plaintiff to relief against Lord, the master, we think, has found sufficient. Holberts & Branning were in actual possession of the land, and had been from April, 1874, down to 1st September, 1877, the time of the deed to Lord. This possession was open, notorious, exclusive and continued. Lord himself testifies that he knew of their possession, but claims that that knowledge was of a possession as tenants of McKinney, but admits that he received that knowledge from McKinney and not from any person actually in possession. We can discover no rule of law nor principle of equity which would excuse Lord from inquiring of the parties in possession as to how they held. It was negligence on his part, if not constructive fraud, for him to quietly ignore this evidence of title. Possession is notice to all the world of the title a person claims under. Neither the advice of counsel nor any amount of inquiry scattered over other territory could excuse Lord from inquiring on the land itself, or of those who had the land in their possession. *Possessio pedis* would have given some force to their declarations, and at the same time it took away all force from the declarations of McKinney or any one else. . . . . . We have reviewed all the evidence in the case, and find that the defendant Lord is affected with constructive fraud, and that a decree should be entered against him avoiding the deed of Mahlon McKinney and wife to Alva J. Lord for the land in dispute."

The court accordingly entered a decree ordering the defendant McKinney to perform the agreement set forth in the bill by executing a proper deed to the plaintiffs; and further declaring the deed from McKinney to Lord, fraudulent and void. Whereupon Lord took this appeal assigning for error the decree of the court.

*H. Wilson* (with whom was *C. S. Minor*) for appellant.— This is a bill for the specific performance of a parol contract for the sale of lands, alleged upon one side and denied on the

other. The evidence to sustain such a decree must be clear and strong. Boyce *v.* McCulloch, 3 W. & S., 433; Raffensberger *v.* Cullison, 4 C., 426; Graham *v.* Pancoast, 6 C., 97; Stewart's Appeal, 28 P. F. S., 95. It is then a matter of grace and not of right: Weise's Appeal, 22 P. F. S., 354; Brawdy *v.* Brawdy, 7 Barr, 158; Greenlee *v.* Greenlee, 10 H., 235; Workman *v.* Guthrie, 5 C., 510. Specific execution will not be granted when the evidence is in any decree uncertain: Fussell *v.* Rhodes, 2 Phila., 155; Sage *v.* McGuire, 4 W. & S., 230. The decree against Lord was not justified either by the pleadings or the evidence.

*G. G. Waller* for the appellees,—presented no paper book.

Mr. Justice TRUNKEY delivered the opinion of the court, March 10, 1884.

This bill was filed on the 19th of December, 1877, for a decree of specific performance of an alleged oral contract made May 25, 1874. It avers that McKinney owned the land, and certain personal property; that the plaintiffs held three judgments against him amounting to $3,400 with interest from November 3, 1871, and also a book account against him amounting to $204.65; that McKinney, by parol agreement, sold and delivered said land to the plaintiffs in payment of said judgment, agreeing to convey the same whenever requested, and plaintiffs agreeing to satisfy said judgments upon such conveyance; and that he also sold and delivered the personal property in payment of the book account; that McKinney, though often requested, delayed the execution of such conveyance, and after the lien of the judgments expired he refused to convey to them, and conveyed the land to Lord; that the lien of said judgments was lost by reason of the plaintiffs' faith in said agreement; and that the plaintiffs had held exclusive possession of the land, cleared forty acres and made improvements to value of $1,500.

McKinney admits that he owned and possessed the land, and that the plaintiffs held judgments against him as averred in the bill; but he denies the making of an agreement for sale, and avers that the plaintiffs obtained possession under an agreement to work the farm and account for the profits; that they have removed timber and bark and injured the property to an amount greater than the judgments; and he claims protection under the statute for prevention of frauds and perjuries.

Lord answered that he bought the land in good faith, without knowledge of plaintiffs' claim of an equitable title, and pleads the said statute. But if the plaintiffs were in posses-

sion under a valid contract for purchase of the land, Lord was not an innocent purchaser, and the court rightly ruled that the conveyance to him shall not defeat the plaintiffs' title: Jamison *v.* Dimock et al., 95 Pa. St., 52. Then, the real inquiry is whether they have shown a case that warrants a decree for specific performance.

The master finds " that all the material averments contained in plaintiffs' bill of complaint relating to the terms of the contract, its execution on the part of H. & B. and the several matters which entitle them to specific performance are sustained by the evidence." This is his finding upon which he recommends the decree. Specifically, he did not find what improvements were made, nor their value. There is real conflict in the testimony whether the value of what the plaintiffs took off the land did not exceed that of the improvements. Be this as it may, it is certain that no buildings were erected, none repaired, no orchards planted, that the farm was occupied by tenants, and that the improvements can be compensated in damages. He did find, notwithstanding the parties aver and admit that McKinney owned and held possession of the land on May 25, 1874, that McKinney left in April preceding when the tenant of plaintiffs moved upon the land. This fact was corroborative of McKinney's testimony that in April he leased and gave possession to the plaintiffs. One of the plaintiffs, William Holbert, and his son were witnesses in support of the allegations in the bill. At first they were positive the contract was made on May 25, but after the closing of the defendant's testimony, in rebuttal, corrected their first date placing it in April; they fixed the date at first by reference to the credit on their book for the personal property, and at last by reference to an execution issued for the seizure of that property. It may be noted that contrary to his averment in the bill and to the testimony of his son, the plaintiff testifies that the personal property was worth more than the book account, and the overplus was to be credited on the judgments.

The master says that " the parties alike contradict all testimony conflicting with their respective allegations in relation to the contract," and thinks the number and consistency of the plaintiffs' witnesses outweigh the defendants'. He is probably correct in this, but a specific finding of the essential facts would be more satisfactory than his opinion that " the plaintiffs have met all the requirements growing out of the construction of the Statute of Frauds.

It is noticeable that nothing was paid by the plaintiffs on the alleged contract; they were to satisfy certain judgments on delivery of the deed, and until the delivery, those

judgments were not to be satisfied. So the bill avers and so the plaintiff testifies. Though the lien has expired, the judgments are now record evidence of McKinney's indebtedness to the plaintiffs. Until the lien expired the parties treated the judgments as in force. On May 1, 1876, the plaintiffs signed and delivered to McKinney a paper as follows:

"This is to certify that Mahlon McKinney has this day given us his judgment notes of $500 each, due one, two, three, four, five, six, and seven years, making in all $3,500, which we agree to return to said Mahlon McKinney within twenty days from this date, or cancel the judgments we now hold against him for $3,400 principal. We may do either at our option." The meaning of that is the same since the lien of the judgments expired as before. It is neither obscured nor twisted by lapse of time nor pecuniary interest. It accords with the record, while the oral testimony for the purpose of reconciling the paper with the allegation that the judgments were actually satisfied, is inconsistent with both the record and the writing. The three notes on which the judgments were founded were entered in the plaintiffs' book of bills receivable; after the expiration of the lien and after the plaintiffs had consulted an attorney, but before the beginning of this proceeding, the plaintiffs wrote on the page where the notes were entered, under the head of, "When and how disposed" these words: "Paid by all real and personal estate bought of Chapman."

Both allegations and proofs affirm that the judgments were to stand till conveyance of the land to the plaintiffs, and no time was fixed when the deed was to be executed, other than when requested. It is not averred that the plaintiffs were induced to let the lien drop by any artifice of McKinney. They neglected to procure revival of the judgments. Then they demanded the deed, and then McKinney refused. He denies that he made the contract, but being overweighed by the opposing testimony, says the thing proved is void. His fraud is of the kind which exists wherever a man refuses to perform a parol contract for sale of land, and relies on the Statute of Frauds to prevent its enforcement. Had not the plaintiffs neglected to keep the lien alive there would be no vague charge of fraud; were it not for the loss, or danger of loss, of their judgments, there would be no devices to avoid the statute.

The specific findings of fact by the master are taken as true. But all his inferences of fact, resulting from his reasoning cannot be adopted. He did not find that the plaintiffs had satisfied the judgments, or treated them as paid, or that they had promptly requested a conveyance and tendered satisfaction, for such finding would have been against the plaintiffs'

own testimony; yet he infers that the several matters which entitle them to specific performance are sustained by the evidence. In his reasoning, leading to that conclusion, he remarks that a peculiar feature of the case is, that McKinney never had anything invested in the land, nor any interest except the naked legal title; that the consideration was wholly paid by Holbert and Branning when McKinney purchased, and after holding possession for two years and a half McKinney abandoned the land to Holbert and Branning as a payment of the debt. Of course, that is figurative, for if true, McKinney was a naked trustee, and the plaintiffs the real owners. The bill makes no such averments. There it appears that McKinney owned the land and was debtor to the plaintiffs.

Although the fact of a parol agreement for the sale of the land is sustained by the weight of the evidence, among the salient points of the case are, the conflicting testimony respecting the contract, and that the possession is as consistent with the lease averred by the defendants as with the purchase averred by the plaintiffs; the possession was recent, less than four years prior to commencement of the action, and the improvements such that the extent and value thereof can be easily proved and admit of compensation in damages; that the parties treated the judgments, the consideration, as remaining in force until their lien expired; and the insolvency of McKinney was as well known to the plaintiffs at the date of the contract, and while the lien of the judgments was unexpired as it has been since. Should such a contract, under the circumstances, prevail against the statute? This question cannot be affirmed without grave doubt, for the case comes with its discrepancies arising from fallible memory, if not from evil motive. If a chancellor will act when there is doubt, such cases will be frequent, and the uncertainty of titles to real estate be increased. To take a case out of the operation of the statute, its proof in all essentials and its equities should be so plain as to preclude doubt or hesitancy in reaching a conclusion.

Where the proofs were unsatisfactory it was ruled that the case was within the statute, unless there was such part performance as could not be compensated in damages: Postlethwait v. Frease, 31 Pa. St., 472. It has been said that there must be proof of expenditure for improvements not reimbursed by profits derived from the occupation of the land, and not capable of compensation in damages recoverable in an action for the breach of the contract, to take the case out of the operation of the statute: Hart v. Carroll, 85 Pa. St., 508. But where the purchase money has been paid, and exclusive possession given in pursuance of a parol contract for the sale

of land, and the vendee has made no improvements, equity will enforce specific execution of the contract, on the ground that the insolvent vendor shall not have both money and land: Jamison *v.* Dimock, 95 Pa. St., 52. Every day's experience more fully demonstrates that the statute for prevention of frauds and perjuries was founded in wisdom, and is necessary to preserve the title to real property from the uncertainty attending the admission of parol testimony. Where one purchases a tract of land by parol, pays all his money, receives full possession and holds and uses it as his own, equity interferes so as to prevent the vendor from converting the statute made to prevent frauds into an instrument of fraud. The party who claims the interference of the chancellor has the burden of proof. He is presumed to know that the law required the contract to be in writing. When he asks the court to save him from the consequences of his own disregard of the law, he should be held to proof of the requisite facts beyond a doubt. If a chancellor were to act on doubtful parol proof, on strained and fanciful inferences, or vague surmises, he would annul the wholesome provisions of the statute in search of a visionary equity, and introduce into the community the very evils which the legislature intended to remedy: Per GRIER, J. Woods *v.* Farmare, 10 Watts, 195.

Upon the whole testimony we are of opinion that the plaintiffs are not entitled to a decree for specific performance.

> Decree reversed, and bill dismissed at the costs of the appellees.