# Piatt *v.* Seif, Appellant.

*Equity—Specific performance—Decedent's estates—Evidence.*

On a bill in equity against the executors and devisees of a testator for
an account of payments and expenses incurred in purchasing and improv-
ing a property for a saloon, and specific performance of an agreement for
a conveyance of the property to the plaintiff upon payment of the amount
found to be due, it appeared from the declarations of the decedent, from
the fact of the possession of the property by the plaintiff, and from other
circumstances in the case, that the decedent purchased the property for
the plaintiff, but took title in the name of an agent, that he permitted plain-
tiff to go into possession and spend several thousands of dollars in im-
provements and fixtures, and that for several years prior to decedent's
death, plaintiff occupied the premises, built up a large and increasing
business, and acquired in connection with the premises a valuable good
will.   *Held*, (1) that the case was not within the statutes of frauds;
(2) that the plaintiff could not be reasonably compensated in damages, and
was entitled to specific performance.

Argued Nov. 5, 1903.   Appeal, No. 154, Oct. T., 1903, by defendants, from decree of C. P. No. 2, Allegheny Co., Jan. T., 1903, No. 766, on bill in equity in case of · James W. Piatt v. William H. Seif et al.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity for specific performance.

SHAFER, J., filed the following opinion :
The bill is against the executors and devisees of a testator for an account of payments and expenses incurred in purchasing and improving property therein described, and specific performance of an agreement for a conveyance of that property to the plaintiff upon payment of the amount found to be due.

### FINDINGS OF FACT.

1. In the winter of 1897–8 the plaintiff was the keeper of a public house in the city of Pittsburg, and learned that the premises occupied by him as tenant in conducting his business were to be torn down the first of April, 1898, and it became necessary for him to find another location.

2. C. L. Magee, the defendants' testator, was at this time a member of the state senate, and a man of very considerable wealth and of well known generous disposition, and was a friend of the plaintiff's, who, as he frequently afterward said, had been friendly and helpful to him politically and otherwise, the plaintiff being at the time a member of the city council. Knowing of the plaintiff's need of a new place to carry on his ' business, Mr. Magee advised him to buy a place rather than rent one, and, knowing that Piatt had only about seven or eight thousand dollars, which would be entirely insufficient for the purchase of a place for him in the locality desired, he told Piatt to look up a place, and that he would assist him.   The lot in question, on Fifth avenue, in the city of Pittsburg, was at that time up for judicial sale, and Mr. Piatt looked at the property, and made inquiries as to the price at which it could probably be purchased, and reported what he had found to Mr. Magee. They thereupon inspected the property together, and agreed it would be a proper place for Piatt's business, and Mr. Magee agreed with Piatt to buy the property for him, and let him re-

pay to him the cost of it, with interest, when he could, when it was to be conveyed to Piatt, Mr. Magee expressing the opinion that Piatt would be able to clear a considerable sum of money from the business each year, and that the property would greatly increase in value.

3. Mr. Magee thereupon directed Peter Shields, real estate agent, to buy the property at the sale, which was done February 8, 1898, for the price of $75,000, paid by Mr. Magee, and a deed made to Shields, who, by a deed dated the next day, conveyed the same to Mr. Magee. These deeds were placed on record, but by an arrangement with the assessors the land was kept in Shields's name on the assessment books, Mr. Magee stating as a reason that he did not wish to figure as owning property used for the sale of liquors, or derive any profit from such traffic; and that if assessed in Piatt's name it would attract attention that a member of the city council, known to have no great amount of money, should be able to buy such a property.

4. When the property was bought it was Piatt's intention to remodel the building then standing upon the property, and fit it for the purposes of his business; but Mr. Magee advised against this course, and said that he would build a building upon it, and that Piatt could pay for it along with the price of the land. Mr Magee thereupon employed an architect, and directed him to make plans for a building to suit Piatt, and the architect then drew such plans as Piatt wished, and submitted them to Mr. Magee along with Piatt for his advice and approval. Piatt supervised the erection of the building, and was present from day to day while it was being erected, and the building was completed about July 22, 1898, at a cost of $32,195.20, of which Piatt paid $900 and the remainder was paid by Magee.

5. When the building was completed, or perhaps before its final completion, Mr. Piatt, with the knowledge and consent of Mr. Magee, and under the arrangement above stated, went into possession of the property in question, and ever since has had open and exclusive possession of it. After taking possession, and before the death of Mr. Magee, the plaintiff put in a considerable number of improvements and fixtures, costing about $6,000, a part of which were such as a tenant might ordinarily make, and part, such as iron shutters, sewer from

the back cellar, steam plant, elevator, and other items, amounting to a considerable sum, which appear to have been permanent improvements, and these were put in with the knowledge of Mr. Magee. At the same time the plaintiff expended some $10,000 in fitting up and furnishing the premises for his business in a style in keeping with its location.

6. From the time his occupancy began until the present, the plaintiff has given his personal attention to his business upon these premises, and has built up a large and increasing business, and acquired in connection with the premises a valuable goodwill.

7. Sometime in the year 1898 Mr. Magee fell ill and his illness continued until his death, which occurred March 8, 1901. His decline was gradual, and he was, a large part of the time, absent from Pittsburg. Up until a short time before his death he fully expected to recover, and frequently said he would be all right in a short time and be back home. He attended to a large amount of business, involving large amounts of money, during the time he was ill.

8. Mr. Magee left a will with codicils, copies of which are attached to the bill, whereby his residuary estate was given to his wife for life, with remainder to the defendants named in the bill as trustees, and whereby the defendants named in the bill as executors were appointed.

9. After the death of Mr. Magee, Piatt laid his claims before the executors, but made no tender of purchase money at that time. He spoke to them about obtaining a title to the property, and they told him they could do nothing of themselves as executors, and that some legal proceedings would be necessary. They asked Mr. Piatt to pay something in the meantime, and rendered bills to him as for rent each quarter, beginning July 1, 1901, for $1,500 per quarter, and these were paid by Piatt, but it was with the understanding, on the part of both parties, that if Mr. Piatt had any legal claim to the property, such payments should not prejudice his right.

10. Before the entry of this suit, December 1, 1902, Mr. Piatt tendered to the executors of Mr. Magee the sum of $139,000, and demanded a deed for the property in suit. This tender is sufficient to cover the cost of the property and of the buildings, together with interest at six per cent, up to the

time of the tender, and the taxes paid by Mr. Magee or his estate.

11. The property in question has increased greatly in value since the plaintiff went into possession of it, and especially since the death of Mr. Magee, and it is now worth about $250,000.

I. The answer in this case being by executors and devisees, who have no personal knowledge of the matters in question, and who speak solely from information received by them, is not such a responsive answer as puts the plaintiff to proof by two witnesses, or the equivalent.

II. One of the parties to the contract being dead, and the other, therefore, an incompetent witness, and it not appearing that any one was present when any contract was made between the parties, no direct evidence is obtainable as to what took place between them; but the declarations of Mr. Magee, made to so many of his friends, together with the fact of the possession by Piatt, he treating the property as his own, with the knowledge of Mr. Magee, and all the circumstances of the case, clearly establish beyond any doubt that the arrangement between them was substantially as we have found it to be.

III. The main question in this case appears to be whether the plaintiff has shown such a state of circumstances as takes the case out of the statue of frauds. Where possession has been taken in pursuance of a contract, as here, the only remaining question is whether or not there has been such part performance that the purchaser cannot reasonably be compensated in damages. In this case the plaintiff has paid a small part of the purchase money; he has put upon the building some permanent improvements, not of very great value in proportion to the value of the whole property, but of considerable value in proportion to the value of the building. He has furnished the building in a manner appropriate to its situation and the character of the business attracted to it, and by his personal labor and attention has built up a patronage and goodwill of great value. We are of opinion that for this the plaintiff could not be reasonably compensated in damages, and that he is entitled to specific performance of the agreement under which he went into possession. The executors are entitled to the purchase money, but as the legal title is not in them, and

this proceeding is not founded on any of the statutory provisions enabling executors to make deeds, it seems to be necessary that the deed should be made by the executors as such and by the other defendants as holders of the legal title.

Let a decree be drawn directing the defendants to execute and deliver to the plaintiff a good and sufficient deed for the premises described in the bill, upon payment by plaintiff to the executors of the sum of which tender was made, each party to pay one half of the costs.

*Error assigned* was decree awarding specific performance.

*George C. Wilson,* with him *William D. Evans,* for appellant. —A contract for the sale of lands is within the statute of frauds, and therefore void and unenforceable if parol testimony be required to establish any essential part of it: Millon v. Davison, 123 Pa. 298 ; Hammer v. McEldowney, 46 Pa. 334 ; Pugh v. Good, 3 Watts & Sergeant, 56 ; Allison v. Burns, 107 Pa. 50.

To be in doubt about the sufficiency of the parol contract is to be resolved against its execution : Reno v. Moss, 120 Pa. 49 ; Allison v. Burns, 107 Pa. 50 ; Hart v. Carroll, 85 Pa. 508 ; Sample v. Horlacher, 177 Pa. 247 ; Postlethwait v. Frease, 31 Pa. 472.

In all the cases where specific performance has been decreed, " improvements " are either permanent erections upon the land or arise from skill and labor, bestowed in cultivation of the land, which, in either case, will not reasonably admit of compensation in damages. An examination of all the cases in which specific performance has been decreed on account of part performance, consisting of possession and the expenditure of money or labor for improvements, not only in Pennsylvania, but in other states, discloses the fact that in every case the improvements made constituted a permanent and material part of the freehold itself, in many of the cases far exceeding the value of the land itself before the improvements were made, and in consequence thereof will not admit of compensation in damages : Moore v. Small, 19 Pa. 461 ; portion of the land cleared and log house erected : McGibbeny v. Burmaster, 53 Pa. 332 ; cost of lot, $50.00; improvements, $500 ; Allison v. Burns,

107 Pa. 50; cost of lot, $150; improvements, $200 (this is the case so much relied on by plaintiff): Hart v. Carroll, 85 Pa. 508; land cleared and part of distillery erected: Potter v. Jacobs, 111 Mass. 32; house erected, more than the value of the lot: Northrop v. Boone, 66 Ill. 368; value of lot $25.00; improvements, $500: Green v. Finin, 35 Conn. 178; the improvements and the work and labor done on the property increased the value of it threefold.

*M. W. Acheson, Jr.*, of *Patterson, Sterrett & Acheson*, with him *J. M. Swearingen*, for appellee.—This case is taken out of the statute of frauds: Eberly v. Lehman, 100 Pa. 542; Hancock v. Melloy, 187 Pa. 371.

There are other equities not admitting of compensation and tantamount to possession and improvements, and those equities are present here in addition to possession and improvements: Jamison v. Dimock, 95 Pa. 52; Woodward v. Tudor, 81 * Pa. 382; Postlethwait v. Frease, 31 Pa. 472; McKowen v. McDonald, 43 Pa. 441; Coles v. Pilkington, L. R. 19 Eq. Cases, 174; Farley v. Stokes, 1 Parsons, 422; Lamb v. Hinman, 46 Mich. 112 (6 N. W. Repr. 675).

PER CURIAM, January 4, 1904 :

Decree affirmed on the findings and conclusions of the court below.