## Murray v. Flesher, Appellant.

*Judgment notes—Consideration—Failure of—Parol evidence—Case for jury.*

In the trial of an issue upon an opened judgment, which had originally been entered upon a judgment note under seal, the defendant testified that the note was given as collateral to protect plaintiff from loss by reason of his endorsement of other notes for

defendant and that all such notes were paid. Plaintiff testified that the note was given him in payment for his endorsement on other notes.

The "value received," referred to in the note, was not specified, described, explained or designated in any way.

Under such circumstances the case was for the jury and a verdict for the defendant will be sustained.

In such case the question is not one of changing the terms of the writing by parol, but merely one of failure of consideration.

Where a valuable consideration is relied on to support an instrument, sealed or unsealed, it may be inquired into by parol so long as nothing is. permitted to be proved that is directly inconsistent with the consideration named in the instrument itself, or which directly changes the character of the writing or its covenants. Failure of consideration may be shown, for this, instead of attempting to change the terms of the contract, gives a reason why it should not be carried out.

Argued April 28, 1926. Appeal No. 103, April T., 1926, by defendant, from judgment of C. P. Allegheny County, April T., 1924, D. S. B. No. 1358, in the case of Charles Murray v. E. J. Flesher, Trading as Flesher Transfer Company. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Trial of issue on opened judgment entered on a judgment note. Before DREW, J.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant. Subsequently upon motion the court entered judgment n. o. v. for plaintiff in the sum of $1,500. Defendant appealed.

*Error assigned* was the entry of judgment n. o. v.

*Thomas Patterson,* and with him *Charles A. Locke,* of *Patterson, Crawford, Miller & Arensberg,* for appellant.—The maker of a promissory note can always show by his own testimony that the consideration of the note has failed: Piper v. Queeney, 282 Pa. 135; Danser

& Company v. Temple, 15 Del. Co. Rep., 9; Lansdowne Building & Loan Association v. Cable, 15 Del. Co. Rep., page 42.

*William A. Blair,* of *Reed & Blair,* for appellee. —The effect of the defense was to contradict the terms of the instrument: Martin v. Berens, 67 Pa. 459; Gianni v. R. Russell & Co., Inc., 281 Pa. 320; Superior National Bank v. Stadelman, 153 Pa. 634; Fuller v. Law, 207 Pa. 101 and Gilmore v. Gilmore, et al., 276 Pa. 333; Bank of Hooversville v. Sagerson et al., 283 Pa. 406.

The evidence was insufficient to overcome defendant's written promise to pay: Juniata Building and Loan Association v. Hetzel, 103 Pa. 507; Phillips v. Meily, 106 Pa. 536; Faux v. Fitler, 232 Pa. 33; Kline v. Fitzgerald Bros., 267 Pa. 468; Dixon v. Minogue, 276 Pa. 562.

OPINION BY CUNNINGHAM, J., July 8, 1926:

The court below made absolute a rule to open a judgment entered by Charles Murray against E. J. Flesher, trading as Flesher Transfer Company, upon a judgment note under seal dated September 10, 1918, by which Flesher promised to pay Murray $1500, one year after date "without defalcation, value received with interest." Upon the trial points in behalf of both parties for binding instructions were refused and the verdict was in favor of the defendant. The plaintiff moved for judgment n. o. v. and the court set aside the verdict and entered judgment for the amount of the note with interest in favor of the plaintiff and against the defendant, who now appeals from the judgment so entered upon the whole record.

The plaintiff below, appellee in this court, was engaged in the insurance business and the defendant, appellant herein, in the transfer and haulage business. The parties had been acquainted for a number of years

and, beginning in the year 1916 and continuing through the year 1922, appellee in a number of instances endorsed notes for the accommodation of appellant, in the aggregate amount of about $12,000, the proceeds of which were used in the development of appellant's business.

The liability of appellee as such endorser, however, probably never exceeded $2,000 at any one time, and all notes endorsed by appellee were duly paid by appellant. The last of the notes matured and was paid in January, 1923. Appellee also acted as a broker for appellant in placing various lines of insurance for him with Logue Brothers and Company, insurance agents, and arranged in a number of instances for the giving by appellant to said agents of his notes for insurance premiums. These notes aggregated approximately $16,000 and were duly paid by appellant.

On September 10, 1918, appellant requested appellee to endorse for him two notes of that date of $750 each, which appellee did. On the same day appellant gave to appellee the note in suit for $1,500.

The controversy in this case relates to the question of the consideration for this note. Appellant in his testimony, after saying that appellee had endorsed certain notes for him, stated, "And he said to me, when I asked him to endorse on a couple of notes in the aggregate of $1,500, to give him some security so that in event I failed to pay these notes he would have some means of having some advantage of me; so I told him, 'Well, what means can you take?' I had no collateral; if I had I would not need an endorser. And he said, 'Well, I am perfectly willing to endorse for you; I have been getting your insurance, and the business is increasing.' But the war at that time had progressed a great many years, and all my business was exclusively for the Westinghouse, in handling war munitions at Garrison Alley and Twenty-fourth Street, and on ac-

count of the uncertainty of life and the state of affairs I felt he was entitled to be protected in any way. shape or form.......Q. Go on. A. So he said, 'Well, give me a judgment note.' I said, 'Well, all right.' He said, 'Have you got any forms here?' I think I had some in my office; I had been giving notes on leases for trucks and it was not unusual for me to give a judgment note; and I wrote one out for that amount......... Q. Who suggested the amount of the note? A. Mr. Murray. Q. How did you determine the amount of the note? A. Well, we talked that matter over. My liability up to that time—his liability on my endorsements—had never been more than one thousand dollars at any one time, and while it was more just then, including the notes he endorsed for me that date, we agreed subsequent to the payment of those notes it would not be necessary for him to endorse more than fifteen hundred dollars, that would be the maximum. Q. Did the amount of the judgment note have any relation to the amount of endorsements he made for you on that day? A. It did, because the two notes were for $750 each, or a total of $1,100."

Again, in response to the inquiry whether the note had been given solely for the purpose of protecting appellee against his contingent liability as an endorser, appellant replied, "Absolutely; given to protect him, in event of my death or the collapse of my business, because 95% of my business was war munitions at that time." After stating that he had paid the last note upon which appellee was an endorser early in 1923, appellant testified to the following conversation between appellee and himself, "Murray at that time had endorsed for me only just at rare intervals, the frequency of the notes had been pretty well spaced, and he said to me, 'Oh, by the way, Flesher, you've got all those notes cleaned up, haven't you,' and I said, 'Yes, and I don't think I will need any further endorsements

from you'; and I said, 'What about that judgment note I gave you for protection, Murray?' and he said, 'Oh, I'll tear it up.' Those are his very words.''

Appellee did not deny that this conversation took place as testified to by appellant. On the other hand appellee's testimony with respect to the consideration for the note was as follows, ''I said to him, 'Now, Flesher, look here, this has been going on two or three years, I have endorsed a number of notes for you, and helped you buy trucks previous to this, your business is getting now where you have nice equipment, and I think I should be compensated in some way.' 'Well,' he said, 'Murray, I haven't any money; I am trying to borrow money now to buy this truck.' I said, 'All right; but,' I said, 'you can give me a note.' He said, 'All right, I will give you a note; how much do you think you ought to have?' I said, 'You have told me you want to continue buying equipment until you get possibly ten or twelve trucks.' I said, 'If you will reimburse me, compensate me, to the extent of fifteen hundred dollars, I will continue to endorse your notes until you get in such place you can carry yourself along.' He said all right; and he had a note there and he sat down and wrote it out on the typewriter, signed it and gave it to me. Q. Was there anything said at that time about it being for collateral security? A. Nothing said about collateral at all.''

Later in his testimony, and in answer to a request by the trial judge that he state what consideration he was to give for the note, appellee replied, ''I was to continue to endorse his notes for him to buy equipment and conduct his business, and endorse notes or be responsible for his insurance premiums.''

During the year 1923 appellant discontinued placing his various insurance policies through appellee and the relations between the parties became somewhat strained. Although the note became due under its

terms in September, 1919, no demand was ever made personally by appellee for payment, but in March, 1924, demand was made through appellee's attorney and judgment was confessed on March 25, 1924. From the foregoing recital it is clear that the difference between the parties was that appellant contended that the note was given as collateral security to protect appellee against any contingent loss by reason of his endorsements, while appellee contended that it was given as compensation for these endorsements and other accommodations. The learned trial judge adequately and impartially submitted the issues of fact to the jury and the trial resulted in a verdict for appellant. The ground upon which the trial judge subsequently set aside the verdict and entered judgment in favor of the appellee upon the whole record is stated by him in his opinion in the following language:

"Is the uncorroborated testimony of the defendant, which is flatly denied by the plaintiff, sufficient to make null and void defendant's definite written promise to pay absolutely $1,500? The question is its own answer, of course it is not. An equitable claim cannot be established by the uncorroborated testimony of the claimant when denied by the opposite party on oath. No chancellor would reform a writing upon such testimony as here presented. The rule is that a chancellor invariably refuses a decree on the uncorroborated testimony of a single witness. Brawdy v. Brawdy, 7 Barr 157.

For the plaintiff, in addition to his own oath and his flat denial of the assertion of the defendant, we have the persuasive evidence of the note itself and the admission of defendant that it is his promise to pay. This cannot be brushed aside by the unsupported oath of the defendant."

The single assignment of error challenges the correctness of these conclusions on the part of the learned trial judge. We are of opinion that the assignment

should be sustained. It seems to us that the conclusions reached by the court below are based upon a misapprehension of the nature of the defense interposed by appellant, and this inference is strengthened by a consideration of the authorities cited in the opinion. As we read the testimony it was a legal and not an equitable defense. There was no allegation of fraud, accident or mistake, nor, as we understand it, was any attempt made to vary the terms of or reform the written instrument by parol evidence. The defense was not the kind of an equitable defense which, in view of the denial of the appellee, must be sustained by two witnesses or by one witness with corroborating circumstances amounting to another witness.

It is to be noted in the first place that the action here is between the original parties and no rights of a holder in due course are involved, and in the second place that the "value received" referred to in the note is not specified, described, explained or designated in any way. In other words, the thing for which appellant promised to pay appellee $1,500 is expressed in the contract merely as "value received," and there is no explanation in the instrument with respect to what this thing of value was. It is admitted by appellee that the note was not given to secure the repayment of money loaned. This admission distinguishes the present case from our case of Schultz v. Rudman, 81 Pa. Superior Ct. 239, cited by appellee. Appellant is not attempting to vary or change his promise to pay but avers that the consideration which supported this promise has failed and therefore the promise is unenforcible. This is not an endeavor to prove something inconsistent with a consideration named in the contract, nor is it an effort to vary or alter the terms of the instrument or the covenants therein contained.

Under the provisions of Section 28 of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 199, absence or failure of consideration is recognized as a

matter of defense between the original parties. Where a valuable consideration is relied on to support an instrument, sealed or unsealed, it may be inquired into by parol so long as nothing is permitted to be proved that is "directly inconsistent" with the consideration named in the instrument itself or which directly changes the character of the writing or its covenants, and "failure of consideration may be shown, for this, instead of attempting to change the terms of the contract, gives a reason why it should not be carried out": Piper v. Queeney, 282 Pa. 135, and cases there cited; Peale v. Addicks, 174 Pa. 543. As we have seen, there is no specification or description of the consideration written into the instrument itself. Appellant says that the "value" which by the instrument he admits he received was the lending by appellee of his credit to appellant by becoming accommodation endorser on the various notes; that the note in suit was given as collateral security to protect appellee against any loss which he might suffer by reason of thus lending his credit; and that when the notes which appellee had thus endorsed were paid the consideration for the note in suit failed.

Appellee on the other hand says that the "value" which appellant received for executing the note in question was the services which appellee had rendered appellant in endorsing appellant's notes and arranging for appellant to give notes for insurance premiums and that the note was not given as collateral security to protect him but as compensation for such services. We are of opinion that appellant was entitled to set up this defense and that his evidence was sufficient to require the submission of the case to a jury and to sustain the verdict in his favor.

Even if the court below had been correct in its assumption that the defense here interposed was an equitable one we are not prepared to agree with its statement that the case for appellant depended upon his

"uncorroborated testimony which is flatly denied" by appellee. An examination of the testimony shows that appellee nowhere denied appellant's statement to the effect that appellee had promised to tear up the note in suit upon being informed that all the notes upon which he was an endorser had been paid. There are also a number of circumstances corroborating appellant; for instance, when the note was given appellant was employing appellee as his insurance broker for the placing of policies upon which the premiums were quite considerable in amount, and, although the note was due one year after date, or September 10, 1919, no effort was ever made to enforce it until after appellee had been deprived of appellant's insurance business in the fall of 1923. The appellant's story is in harmony with the usual and natural course of transactions where an indorsement is given for the accommodation of another and security taken to protect the indorser; whereas, appellee's contention that, although he was receiving profitable insurance business from appellant and his liability as endorser on appellant's notes did not exceed more than several thousand dollars at any one time, the appellant agreed to pay him $1,500 as compensation, or as a reward, for lending his credit is scarcely consistent with the reasonable and probable course of events. All these considerations, however, were for the jury and we refer to them here only for the purpose of showing why we cannot agree with the court below in its statement that the case for appellant depended entirely upon his uncorroborated testimony.

The judgment is reversed and it is now ordered that judgment be entered on the verdict.