# Cridge's Estate.

*Evidence—Privileged communications—Attorney-at-law—Communications made to attorney in presence of third persons.*

1. Communications made by a client to his attorney in the presence of third persons are not privileged.

*Contracts—Agreement to devise real estate—Consideration.*

2. An agreement to make a will and devise real estate in a fixed way is binding and irrevocable where supported by a proper consideration.

*Contracts — Parol evidence—Fraud—Consideration—Presumption—Failure of consideration.*

3. Parol evidence, if sufficient, may be used to show fraud, accident or mistake in the making of a contract, or a failure of consideration, and may be offered to show a contemporaneous parol agreement which induced the signing; but the agreement set up must not be inconsistent with the express provisions of the writing.

4. If the matter proposed to be shown by parol is the subject of the covenant in the agreement which is complete, such evidence to alter the terms cannot be received.

5. Parol evidence is admissible to show that there was some other or different consideration than that expressed in the writing.

6. The consideration mentioned in the writing is merely presumptive evidence that it is the real one.

7. Where it is admitted by the maker of an agreement to sell real estate that the consideration mentioned in the writing was not complete, oral explanation of the understanding between the parties is admissible.

*Statute of frauds—Specific performance—Writing—Evidence as to consideration.*

8. In a case where specific performance of a contract to sell real estate is demanded, it cannot be asserted that the statute of frauds bars the claim, where it appears that the claim was founded on a written contract of sale, and the only dispute was as to whether

the consideration was correctly expressed; and this is especially so where it appears that a cash payment had been made and that the property remained in the hands of proposed grantees thereafter.

Argued March 15, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ.

Appeal, No. 10, March T., 1927, by Lillian A. Cridge, executrix, from decree of O. C. Allegheny Co., Jan. T., 1926, No. 304, awarding specific performance, in estate of Byron F. Cridge, deceased. Affirmed.

Petition to compel conveyance of real estate. Before MILLER, P. J., TRIMBLE and MITCHELL, JJ.

The opinion of the Supreme Court states the facts.

Decree for specific performance, in opinion by MILLER, P. J.

Lillian A. Cridge, executrix, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John E. McCalmont,* for appellant.—The prior understandings and agreements, between the same parties, relating to the same subject-matter, were merged into the subsequent written agreement: Ivery v. Phillips, 196 Pa. 1; Hamilton v. Fleck, 249 Pa. 607.

The written instrument, which is a negation of the alleged parol, contemporaneous, inducing agreement to make a will and devise real estate, cannot be cancelled without an averment and proof of fraud, accident or mistake: Keilich v. Blum, 214 Pa. 59; Neville v. Kretzschmar, 271 Pa. 222; Gianni v. Russell Co., 281 Pa. 320; Union Storage Co. v. Speck, 194 Pa. 126; Vito v. Birkel, 209 Pa. 206; Seitz v. Machine Co., 141 U. S. 510; Garrison v. Salkind, 285 Pa. 265.

Decedent's oral promise to make a will, devising land to another at some future time, in the absence of any other writing or added consideration or possession, did not comply with the statute of frauds: Rearick v. Rear-

ick, 15 Pa. 66; McGinley's Est., 257 Pa. 478; Shroyer v. Smith, 204 Pa. 310; Smith v. Tuit, 127 Pa. 341; Donohoe's Est., 271 Pa. 554; Gilbraith's Est., 270 Pa. 288; Hertzog v. Hertzog, 29 Pa. 465.

Any words spoken, or any acts done, by a client in the presence of his attorney and in the course of his employment, are privileged, and may not be proved by the testimony of the attorney without the consent of the client: Kaut & Reineman v. Kessler & Schlather, 114 Pa. 603; Miller v. Weeks, 22 Pa. 89; Goodwin G. & M. Co., 117 Pa. 514; Swayne v. Swayne, 19 Pa. Superior Ct. 160; Seip's Est., 163 Pa. 423; Mitchell v. Mitchell, 212 Pa. 62; Alexander v. Queen, 253 Pa. 195.

*John B. Nicklas, Jr.,* for appellee.—A parol, contemporaneous agreement which induced the execution of a written agreement cannot be received and enforced when the written contract on its face shows that it is incomplete and the subject-matter of the verbal agreement is not covered therein, without an allegation of fraud, accident, or mistake: Faux v. Fitler, 223 Pa. 568; Thomas & Sons Co. v. Loose, Seaman & Co., 114 Pa. 35; Neville v. Kretzschmar, 271 Pa. 222; Danish Pride Milk Products v. Marcus, 272 Pa. 340.

The enforcement of the parol promise and consideration made in conjunction with the written contract after possession has been taken, improvements made and substantial evidence of ownership asserted in reliance thereupon does not violate the statute of frauds: Hancock v. Melloy, 187 Pa. 371; Parry v. Miller, 247 Pa. 45; Leap v. Leahey, 67 Pa. Superior Ct. 337.

The authorities are well established in Pennsylvania for the admission of communications to an attorney when made in the presence of both parties to a contract: Leitch v. Bank, 234 Pa. 557; Seip's Est., 163 Pa. 423; Goodwin Co.'s App., 117 Pa. 514; Fogg's Est., 249 Pa. 63; Brown v. Coal Co., 211 Pa. 579; Swayne v. Swayne, 19 Pa. Superior Ct. 160.

Privilege ceases when the communication is made to an attorney in the presence of a third party: Weaver's Est., 9 Pa. C. C. R. 516; Kramer v. Kister, 187 Pa. 227.

. We do not contend that the declarations of the deceased are sufficient, standing alone, to prove a parol contract, but they are proper evidence to corroborate the direct evidence of one who heard the contract made: McCue v. Johnston, 25 Pa. 306; Taylor v. Gould, 57 Pa. 152; McGibbeny v. Burmaster, 53 Pa. 332; Parry v. Miller, 247 Pa. 45; Frazier v. Foreman, 269 Pa. 13; Park v. Park, 39 Pa. Superior Ct. 212; Schroyer v. Smith, 204 Pa. 310; Davidson v. Young, 167 Pa. 265.

OPINION BY MR. JUSTICE SADLER, April 11, 1927:

Cridge, now deceased, was the owner of some thirty acres of land, and, in 1913, leased the same to Mr. and Mrs. Miller for a rental charge of $25 per month. It appeared that the tenants, in addition, though not obligated to do so, furnished the landlord garden truck, and the wife performed other services for him without compensation. Prior to 1918, a house was built on the land, a part of the price being paid by the lessees. In that year it became necessary to erect a barn. Cridge had no funds which he could apply for such purpose and asked the tenants to advance the necessary money, stating the place would be given to them when he died. During the same year, and the two following, the new structure was constructed at a cost in excess of $3,600, the entire expenditure being borne by the Millers.

In December, 1920, Cridge proposed that title to the land be taken by them. He declared that the rent then paid would not furnish him with sufficient support, but he would agree to convey upon the payment of $500 in cash, and $50 per month, with the understanding, as now claimed, that he would provide by will that, after his death, nothing further should be demanded, and a deed would be made to Mrs. Miller. It was agreed that the parties meet at the office of an attorney, Sample,

for the preparation of the necessary contract. While driving there on December 20th, he repeated the understanding in the presence of a competent witness, who testified to the facts as stated. The attorney was advised that the consideration was to be on the basis of $400 per acre, and he suggested that the husband be named as one of the grantees. At this time Mrs. Miller seemed dissatisfied, and withdrew from the room to consult with Cridge. What matters were then discussed is not proven, but it was arranged that Sample should prepare an agreement to be executed at his home on Saturday evening, the 22d.

The contract then submitted was in the form commonly used, including the ordinary printed phrases, and was read by Sample. It provided for the payment of $500 in cash, and $50 per month, with interest at four per cent. When principal to the amount of $5,000 had been paid, then the deed was to be delivered, and a mortgage given for the balance. It appeared by the competent evidence of the attorney, both interested parties being present at the time of the conversation, that the vendees refused to sign, stating that it did not express the true understanding. Cridge then said, "Well now why? You know what I promised you. I will make good; we will go ahead and get this thing fixed up." Upon this assurance the contract was executed. It will be noticed that interest at four per cent on the price named would exhaust all of the monthly payments of $50 provided except $2, so that practically a century would elapse, unless installments were increased in amount, before the $5,000 of principal would be turned over and the deed given. The sum of $500 was given to Cridge, and the monthly payments were also turned over to him until February 1, 1924.

Cridge died in the last named month leaving a will by which he devised all of his property to his sister. No mention was made of any alleged agreement with the Millers, though he stated to his attorney and others that

the property was to be given to her at his death, bearing out the contention of the purchasers that this was part of the understanding when the deed was made. Unfortunately for them, the statement of Cridge made to Sample alone as to the real agreement cannot be considered, as the latter was then acting as his attorney, and the communication was privileged: Alexander v. Queen, 253 Pa. 195; Mahler v. Singer, 285 Pa. 540. He cannot be said to have acted in the transaction for both parties, so as to make the statements generally admissible: Leitch v. Diamond National Bank, 234 Pa. 557; Fogg's Est., 249 Pa. 63; Doll v. Loesel, 288 Pa. 527. But what was stated in the presence of all interested as to the promise made at the signing is to be considered (Hummel v. Kistner, 182 Pa. 216), as are the declarations of Cridge to Sample in the presence of the third party, Stahr. "There is no privilege as to a communication between attorney and client in the presence of a third person......and either the attorney or the third person who was present may testify in respect thereto. A fortiori, there is no privilege as to a conversation or transaction in which attorney, client and a third person participate, or a conversation or transaction between the client and a third person in the presence of the attorney": 40 Cyc. 2377.

Some time after the signing of the agreement, Stahr desired to purchase other land owned by Cridge, and met with him in Sample's office, and the decedent then stated that the Miller's had taken over the farm property, and it was his purpose to make a will giving it to the wife. According to Stahr, he declared (referring to the Millers): "We have got an understanding that I will give it to her at my death." He was asked on cross-examination as follows: "Q. Did he state whether or not he had promised that to her? A. Why, sure, he stated he promised it to her." Stahr testified to declarations by Cridge on several other occasions, expressing his intention to so will the farm, as it is averred was under-

stood when the contract was signed. He told Adolph Geiger the will was made and he had kept his promise. Kist, a disinterested party, testified as to a conversation with Cridge, in which the latter declared: "I sold it [the farm] to Mrs. Rosie Miller, and he said he signed an agreement that $500 in cash and the rest $50 a month until the date of his death, and after that the property belonged to Mrs. Miller." To Uhlman he stated: "Whenever he is dead, that she aint got anything to pay on it no more, that the place is hers." There was evidence of the agreement made on the drive to the lawyer's office, when the matter was discussed,—a sufficiently close time to justify the claim of it was contemporaneous (Delaware Co. Trust Co. v. Keenan, 78 Pa. Superior Ct. 341), and the declarations of Cridge are admissible as corroboration of the fact that a promise was made, and its scope: Davidson v. Young, 167 Pa. 265; Lineaweaver's Est., 284 Pa. 384; Rearick v. Rearick, 15 Pa. 66; Piatt v. Seif, 207 Pa. 614. Such admissions are to be received (Gregory's Exr. v. Com., 121 Pa. 611) though the declarant be dead: Henry on Trial Ev., 449. An agreement to make a will and devise property in a fixed way is binding and irrevocable where supported by a proper consideration: Shroyer v. Smith, 204 Pa. 310; Smith v. Tuit, 127 Pa. 341; McGinley's Est., 257 Pa. 478.

It is urged that there is a legal bar to a recovery in the present case, since the promise to limit payments to the lifetime of Cridge is a contradiction of the written agreement, which alone controls, since it is the expression of the final result of the negotiations of the parties, and the best evidence of the transaction. It has long been held in Pennsylvania that parol evidence, if sufficient, may be used to show fraud, accident or mistake in the making of a contract, or a failure of consideration (Murray v. Flesher, 88 Pa. Superior Ct. 592), and may be offered to show a contemporaneous parol agreement which induced the signing: Neville v. Kretz-

schmar, 271 Pa. 222; Danish Products Co. v. Marcus, 272 Pa. 340. The rule has been generally recognized that the agreement set up must not be inconsistent with the express provisions of the writing: Stull v. Thompson, 154 Pa. 43. And the more recent decisions have enforced even more strictly this principle, holding that if the matter proposed to be shown by parol is the subject of a covenant in the agreement, which is complete, such evidence to alter the terms cannot be received, and we have no intention of weakening the position taken in Gianni v. Russell, 281 Pa. 320, and Murphy v. Pinney, 86 Pa. Superior Ct. 458.

A distinction has, however, been drawn in the decisions, where the effort is made to show by parol the true purchase price. "The amount of the consideration in a contract, whether large or small, does not usually affect the covenants of the parties, and therefore, the fact that there was some other or different consideration than that expressed in writing may be orally shown, the consideration mentioned being held only presumptive evidence that it is the real one": Henry on Trial Ev., 383. Thus it has been held permissible to prove that the sum named was more than that stipulated for in the deed, and that additional amounts were to be paid (Piper v. Queeney, 282 Pa. 135; Croyle v. Cambria L. & I. Co., 233 Pa. 310; Potter v. Grimm, 248 Pa. 440; Faux v. Fitler, 223 Pa. 568; Henry v. Zurflieh, 203 Pa. 440; Patterson's Est., 86 Pa. Superior Ct. 299), that other obligations not named have been assumed (Buckley's App., 48 Pa. 491), or that there was no money consideration, though one is named, the transaction constituting a mere gift (Audenried's App., 89 Pa. 114; Lewis v. Brewster, 57 Pa. 410), or that there was a limitation on seeming liability: Humbert v. Meyers, 279 Pa. 171.

In discussing this question in an early case, subsequently cited with approval, it was said: "It is plain from all the cases on this point, that any discrepancy which may appear to exist in the decision of them arose

entirely from a difference of opinion among judges as to what was or was not inconsistent with the terms of the deed; some judges thinking that the insertion of any particular consideration in a deed, without more, expressly negatived the fact of its being founded upon any other or greater consideration; while others,—conceiving that, as the law did not always require the true or the whole of the true consideration to be inserted in order to give the deed validity, and that therefore it frequently happened that but little regard was paid by the parties to the consideration set forth in the deed, whether it was the whole consideration or not, leaving it perhaps to the scrivener to put in such of it as in law he might deem sufficient to make the deed operative,—thought it unreasonable to make the consideration so introduced into the deed conclusive upon the parties, so as to preclude them from showing the true or the whole consideration whenever the ends of justice might seem to require it. The consideration being thus inserted, rather to meet the exigency of the law than the whole truth of the case, it was held not to be inconsistent with the intention of the parties, which ought always to give force and meaning to the terms of the deed, to admit parol evidence to show what the true consideration of it was": Jack v. Dougherty, 3 Watts 151, 158.

It will be remembered, in the case at bar, that the farm was leased for $25 a month. The tenants had paid in part for the building of the house, with which sum Cridge was chargeable, as well as advancing more than $3,600 expended in the erection of the barn, at the time the contract was made. Cridge then secured in addition $500 in cash, and a monthly payment of $50 for at least the term of his life, and was relieved from further liability for taxes and repairs. He undoubtedly made some promise to secure the signing of the agreement, and the obligation assumed appears by his statement of the terms made before signing, and the corroboration by several witnesses who testified to declarations that the

payments were to continue only during his lifetime. The true understanding was sufficiently shown and should be enforced.

Irrespective of the right to introduce oral testimony to show the true consideration, there is a convincing reason why parol evidence should be considered here. The contract, insofar as the consideration is concerned, was not complete, as appeared by the admission of Cridge to Stahr that there was an understanding that the deed was to be turned over on his death. This admission is to be considered in connection with the statement of the attorney that the contract apparently did not set forth the terms in full, since the Millers refused to sign until assured that the "promise" of the vendor would be kept. Where a party admits facts showing the incompleteness of the writing, oral explanation of the understanding is admissible: Ward v. Zeigler, 285 Pa. 557. We are of opinion that this case falls within the exception there pointed out.

The present proceeding was instituted in the orphans' court, and petitioner demanded specific performance of the contract of sale. It was urged on behalf of Cridge's estate that the statute of frauds intervened, but this cannot be, for the claim presented is founded on the written contract of sale, the only dispute being as to whether the consideration was correctly expressed. In addition the money presently payable was paid over, actual possession of the farm was taken, and the property remained in the hands of the proposed grantees thereafter: Piatt v. Seif, 207 Pa. 614; Lord's App., 105 Pa. 451; Parry v. Miller, 247 Pa. 45; Jamison v. Dimock, 95 Pa. 52; Leap v. Leahey, 67 Pa. Superior Ct. 337.

A careful examination of the record, reading it in light of the applicable authorities, leads us to the conclusion that the assignments of error must be overruled.

The decree is affirmed at the cost of appellant.