MONTGOMERY v. CITY OF PHILADELPHIA et al.

(District Court, E. D. Pennsylvania. October 9, 1918.)

No. 5226.

1. ASSUMPSIT, ACTION OF &1, 10—PENNSYLVANIA PRACTICE—EQUITABLE DEFENSES—INTERPLEADER.

Under the Pennsylvania practice, an action in assumpsit is open to equitable defenses, and when the real issue is, not whether the defendant owes, or how much, but to whom the money owed rightfully belongs, the action is transformed from one in debt to an interpleader proceeding between the respective claimants.

2. INTERPLEADER &32—MONEY PAID INTO COURT BY DEFENDANT—RIGHT TO HAVE OWNERSHIP DETERMINED.

When a court has jurisdiction of the parties and of the subject-matter, and emphatically when that subject-matter is money paid into court for the express purpose of having its ownership determined therein, there is no legal procedure obstacle in the way of such determination.

3. BANKRUPTCY &172—PROPERTY PASSING TO TRUSTEE—MONEY ASSIGNED BY BANKRUPT.

An assignment by a contractor for city work of all money to become due under the contract to the surety on his bond, which on his default completed the work at a loss, held to entitle the surety, as against the contractor's trustee in bankruptcy, to sums earned before default, but reserved by the city, although the city was not notified of the assignment.

At Law. Action by Kingsley Montgomery, trustee in bankruptcy of Cloud, Stiles & Work, a corporation, against the City of Philadelphia and the Maryland Casualty Company, intervening defendant. Judgment for Maryland Casualty Company.

Joseph H. Hinkson, of Chester, Pa., for plaintiff.

John P. Connelly, of Philadelphia, Pa., for defendant city of Philadelphia.

Maurice W. Sloan, of Philadelphia, Pa., for defendant Maryland Casualty Co.

DICKINSON, District Judge. The crucial point of the question involved in this case may be best presented by an outline statement of the fact situation:

Cloud, Stiles & Work, a contracting corporation, entered into a contract with the city of Philadelphia to do certain construction work for

the city. The Maryland Casualty Company became the surety of the contractor. The city reserved the right to withhold a certain percentage of the earned payments (otherwise payable to the contractor) until the completion of the contract. These moneys then became payable as part of the final payment.

As part of the inducement to the surety to become such, the contractor made what is conceded to have been (between the parties) a valid assignment of all moneys which became payable under the contract by the city, including this reserve. The assignment became operative in the event of a default by the contractor upon its contract. This assignment was duly executed and delivered, but no notice thereof was given to the city, nor was there other delivery than of the assignment. The contractor proceeded with the work until May 1, 1916. It then defaulted, and the city thereupon regularly declared, and notified the surety of, the default, and called upon the latter to complete the work. This the surety did at a cost in excess of all payments under the contract, including the sum which had been held back from the contractor by the city by virtue of the right given to it by the contract. The figures expressive of the sum so reserved are $8,215.67.

The contractor, subsequently to the default, went into bankruptcy. The date is agreed to be August 1, 1916. The plaintiff, as trustee in bankruptcy, brought this action against the city. The latter, admitting its possession of the fund and having no interest in the controversy over the ownership of it, asked and was given leave to pay the money into court. These further proceedings are in effect an interpleader to determine to whom the money belongs, and the question is presented through and by a case stated.

The plaintiff advances the claim of the bankrupt estate from two positions. One is in effect that the question of to whom this money belongs is a question for the determination of the court in bankruptcy, and because of this the fund should be taken in charge by the trustee. The underlying principle upon which the trustee relies must be accepted, but the acceptance of the conclusion involves a begging of the real question. The right to the money determines the question before us, but the question is, not the right to the money, but the right of the plaintiff to recover in this action.

It is fairly presented by a statement of the defense as really made. It is that the defendant owes the plaintiff nothing, because the debt, although admitted to be due, is due, not to the plaintiff, but to another. If this defense is made out, the plaintiff cannot recover. Ordinarily, it is true, a defendant has no concern with the ownership of the debt which he owes, if the plaintiff has a right of action in the sense of being the legal plaintiff. If he owes the money, and owes it to the plaintiff, he cannot escape judgment by setting up that the ownership of the fruits of the action has passed to a third party. His only legal defense is that he does not owe the plaintiff. Herein lies the distinction between the legal and an equitable, or, as the Pennsylvania practice has it, a use, plaintiff. It may be, however, that the circumstances are such as to give the defendant a real interest in the question of to

whom payment should be made, and that he has a claim upon the protection of the court against the danger of being compelled to pay the debt twice.

[1] The statutes of Pennsylvania supply a weapon of defense, although a somewhat unwieldy one, to such defendants. Moreover, it is one of the merits of the Pennsylvania system of practice that its machinery, aside from that provided by statute, is mobile and flexible. An action in assumpsit, although an action at law, is regarded as an equitable action, or proceeding open to equitable defenses. When the real issue is, not whether a defendant owes, or how much he owes, but to whom he owes, in the sense, not of in whom is the legal right of action, but to whom does the money to be recovered rightfully belong, the action is transformed from an action in debt against the defendant to an interpleader proceeding between the respective claimants to the money, to determine its ownership.

[2] This fully describes the present proceeding. When a court has jurisdiction of the parties and of the subject-matter, and emphatically when that subject-matter is money which has been paid into the court for the express purpose of having its ownership determined, there would seem to be no legal procedure obstacle in the way of such ownership being determined.

Aside from all other considerations, the common sense of the situation would command that the real question be finally, so far as concerns that court, determined. This is particularly true when the court which may pronounce judgment and the court to which the question would be referred are one and the same, although sitting in the one case as a court of equity and in the other as a bankruptcy court.

[3] This brings us to the other standing ground of the plaintiff, which is that the Maryland Casualty Company has no valid title to this fund as against a trustee in bankruptcy, having, as he does, the status of an execution creditor. The argument proceeds upon the thought that the law of Pennsylvania has accepted the principle ingrafted upon the common law by the statute of Elizabeth that possession is the badge of ownership of personal property. In the application of this principle the law of Pennsylvania is guided by the more direct, simple, and sturdier spirit of the common law, and does not follow the more subtle doctrines of the civil law in countenancing secret transfers and liens inconsistent with the ownership indicated by possession. It therefore places under the ban of its condemnation all transfers unaccompanied with a change of possession.

The modification of the doctrine is recognized to the extent that such transfers are good as against the grantor and persons claiming title through him, and that no further change of possession is required than that called for by the nature of the thing transferred, but that such transfers are not valid against execution creditors, unless there has been a change of possession or its equivalent. The principle, it is asserted, applies to choses in action as well as to things tangible. When a chose in action, in the form, for instance, of a claim of debt, is assigned, it is reasonably possible to have the assign-

ment accompanied, not only by a delivery of the written assignment, if there be one, but also by notice to the debtor. Without the latter, therefore, an assignment of a chose in action is void as against an execution creditor. The line of foreign attachment and other attachment cases, in each of which the title of the assignee has been upheld, is distinguished from the case of a trustee in bankruptcy in this: . That the plaintiff in an attachment proceeding stands in the shoes of and makes his claim through the grantor, and that the title of such trustee is that of an execution creditor.

As against this view there are two things to be said. In the first place, the fund here was in a very substantial, although somewhat technical, sense, earned by the surety, and not by the bankrupt. The latter had no claim whatever to the money until the contract was completed, although it is true that the money represents work done by the bankrupt. The contract was completed by the surety and the reserve money thus saved. There is, because of this, great force in the equitable consideration that the salvor should not be at a loss.

In the second place, and as a finality, the question sought to be raised has been set at rest by the case of Hawley Down-Draft Furnace Co., 238 Fed. 122, 151 C. C. A. 198. In that case there was a secret assignment of choses in action in the form of book accounts. Not only was no notice given to those who owed the accounts, but the assignor collected them as if still the owner. It was, it is true, agreed between the grantee and grantor that in making collections the grantor acted as the agent of the grantee; but this relationship was in no way disclosed to others. A receiver was appointed by a state court, who collected the outstanding accounts. Bankruptcy proceedings followed, and the receiver paid over the fund to the trustee in bankruptcy. The assignee made claim to the moneys under his assignment, and his title was upheld against that of the trustee.

This ruling is decisive of the question of ownership. The conclusion reached is based upon the finding that by the assignment of this reserved fund title thereto was in the Maryland Casualty Company. We, in consequence, answer questions (a) and (b) submitted for our decision, but see no occasion to answer question (c).

These answers are as follows: (a) No. (b) Yes.