Howell et ux. *v.* Wheelock, Appellant.

Argued October 4, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Humbert B. Powell,* and with him *Benjamin H. Ludlow,* for appellant.

*A. F. Barbieri,* and with him *J. W. McWilliams,* for appellees.

OPINION BY BALDRIGE, J., December 18, 1934:

In this action of assumpsit the court below made absolute the plaintiffs' rule for judgment for want of a sufficient affidavit of defense.

The plaintiffs leased certain premises to the defendant, the appellant herein, for a term of five years from October 1, 1928, at a monthly rental of $150. The lease provided that "Either party may terminate the lease at the expiration of the term hereby created, by giving to the other ninety days' written notice of intention so to do, but in default of such notice, this lease, with all the conditions and covenants thereof, shall continue for the additional term of one year and so on from year to year until terminated by either party giving to the other . . . . . . days' written notice of intention to terminate said lease at the expiration of the then current term."

The plaintiffs, in their statement of claim, allege that there was a holding over at the end of the five-year term, as defendant had failed to give them 90 days' written notice prior to October 1, 1933, of his intention to terminate the lease. This suit was brought to recover $150 rent for the month of October, 1933.

The affidavit of defense sets forth that defendant communicated with the plaintiffs' agent that he would not sign the lease unless it absolutely terminated at the end of the five-year period mentioned therein; that the agent "suggested [the plaintiffs] would accept a letter from the defendant *along with the lease* (italic ours), in which the defendant would set forth his position that the lease was to absolutely terminate at the end of the five-year term. Relying on the suggestion and agreement, without which defendant would not have signed the lease, defendant avers that before signing the said lease he wrote a letter to the plaintiffs stating that he signed and returned the lease to them with the understanding that the lease should absolutely terminate as of September 30, 1933, and further avers on information and belief that he was advised that the plaintiffs received the written notice so terminating the lease as aforesaid and further accepted and agreed to the same."

It is further averred that plaintiffs' agent "had several personal and telephone calls with Richard Howell, one of the plaintiffs, and the said plaintiffs finally suggested to their said agent that they would accept a letter from the defendant along with the lease, in which letter the defendant was to give notice that the lease was to terminate absolutely at the end of its five-year term. The agent of the plaintiffs telephoned this information to the defendant and the defendant thereupon wrote a letter to the plaintiffs before he signed the lease in which he stated that the lease was to terminate absolutely without further notice on September 30, 1933."

Defendant avers further that he was later advised by plaintiffs' agent that the plaintiffs had received the letter terminating the lease absolutely on September 30, 1933, and that it was entirely satisfactory to

them; that in pursuance of this agreement, he vacated the property on September 30, 1933.

The learned court below held that defendant was attempting to avoid a clear provision of the lease, by alleging an oral agreement made between him and the plaintiffs before the execution of the lease that it should terminate at the expiration of the five-year term; that such an agreement can not be effective, as all previous negotiations were merged in the written agreement, relying upon Fox v. Boorse, 81 Pa. Superior Ct. 211, 215; Gianni v. Russell & Co., Inc., 281 Pa. 320, 324, 126 A. 791; Peoples-Pittsburgh Trust Co. v. B. P. Dunn Home Site Co. et al., 311 Pa. 315, 317, 166 A. 844. Of course, we recognize, as we must, the force of those decisions, but we think the case at bar is not controlled thereby, for two reasons:

1. The lease does not provide when the 90-day written notice to terminate it shall be served. If, therefore, notice was given at the beginning of the term or thereafter, prior to 90 days before the termination of the lease, it could not be said as a matter of law that it was ineffective. True, the defendant avers that *before* signing the lease he wrote the letter above mentioned. We think it may be fairly inferred, however, that the letter was sent to defendant with the lease. That would be in compliance with the suggestion of plaintiffs' agent that they would accept a letter "along with the lease." If these allegations were adequately established, the provisions of the lease were fulfilled.

2. Although the Supreme Court in some of the late cases, of which Gianni v. Russell & Co., Inc., supra (281 Pa. 320), and Speier v. Michelson, 303 Pa. 66, 154 A. 127, are noted examples, made more stringent the rules respecting the admission of evidence to vary and alter written instruments, none of the cases have held that under all circumstances oral evidence is in-

admissible to explain the intention or the action of the parties to a written instrument. If, as alleged, this defendant objected to the terms of the provision in the lease respecting the continuation thereof after the expiration of five years, and, at the suggestion of plaintiffs' agent, he sent along with the executed lease a writing stating that the lease was to terminate at the end of five years, and this written modification to the printed form used was received and accepted, it became an integral part of the lease and was just as binding and effective as if the writing had been physically attached to or embodied in the original instrument.

In the case of Newland v. Lehigh Valley R. R. Co., 315 Pa. 193, 173 A. 822, suit was brought to recover damages by reason of the defendant's alleged negligence. The plaintiff had executed a release, declaring that he released and discharged the defendant "for loss and damage sustained by me or that may hereafter result from personal injuries sustained by me and damage to property owned by me." The Supreme Court stated that if the release stood alone it would be a conclusive answer to plaintiffs' claim. But it appeared from the testimony that the defendant's claim adjuster admitted that the plaintiff released for damages sustained to his personal property only, and that it was not the intention that he release the defendant from liability for the personal injuries he sustained, and that the court below erred in entering judgment for defendant. This case cited, with approval, Bryant v. Bryant et al., 295 Pa. 146, 153, 144 A. 904, where it is said: "It is undoubtedly true that where it is conceded or proven that a writing does not properly or fully state the agreement between the parties on any given point, the written provisions in regard thereto may be explained or supplemented, and the true state of facts established by parol evidence."

In another recent case, Allinger, Assignee, v. Melvin, 315 Pa. 298, 172 A. 712, the only question involved was whether parol evidence was admissible to prove a contemporaneous agreement that judgment on the bond should be restricted to the mortgaged premises only. The facts in that case are that Melvin purchased certain real estate and was to give a mortgage in part payment, but there was no agreement that he should give a bond. Whelan, one of the vendors of the property, told Melvin that they would like to have a bond. Melvin told him that he had not agreed to give one, but, after some conversation on the subject, he consented to give his bond, provided that the lien would be restricted to the property he purchased. When the bond and mortgage were presented at the settlement, Melvin called attention to the fact that the bond was unrestricted and not in compliance with the understanding, and refused to execute it. Thereupon, Whelan stated that the restriction agreed upon had been omitted from the bond by mistake and asked Melvin to sign it to avoid delaying the settlement and that he would immediately give Melvin a letter or agreement protecting him and restricting the obligation of the bond to the real estate mortgaged. The Supreme Court held that evidence to establish these facts was properly admissible, stating: "In view of the finding of the jury, based on the evidence of both parties to the contract, there can be no question that Whelan made a mistake in omitting from the bond the agreed-upon restrictions, that Melvin detected the mistake, refused to execute the papers, and ultimately did so only on Whelan's promise to correct the mistake, as was in fact done by the letter and supporting oral evidence received. The principle governing the decision in Gianni v. Russell, 281 Pa. 320, 126 A. 791 (in which case the evidence in support of the oral agreement was not, as here, uncontradicted), and cases fol-

lowing it, on which appellant relies, has no application to a record like this. Those cases hold that 'if the matter proposed to be shown by parol is the subject of a covenant in the agreement, which is complete, such evidence to alter its terms can not be received' (Cridge's Est., 289 Pa. 331, 338, 137 A. 455), unless it is admitted that the whole of the agreement is not set forth in the writing: Ward v. Zeigler, 285 Pa. 557, 132 A. 798. Here both parties to the contract agree that the instrument, as Whelan drew it, did not express their agreement, and that it would not have been executed unless the supplementary agreement had been made. Proof of such agreement was proper."

In the case at bar, the defendant avers that the plaintiffs admitted that the clause as to continuation of the term was not to be in the lease. He may be able to properly prove that fact; it may be admitted by the agent acting for the plaintiffs, as in the Allenger case. But whether or not the defendant can adequately sustain his defense is a question not now before us.

We are of the opinion, after a careful consideration of this case, that the defendant should have had an opportunity to establish the facts here alleged. It is not such a clear case in which a summary judgment should be had.

Judgment is reversed with a procedendo.